PATTERSON, Chief Justice,
for the Court:
James Frank Bethune and his wife Ruby Moon Bethune filed suit in the Circuit Court of the First Judicial District of Hinds County against John W. Turner, Marsha McCormick and Magnolia Towers, Inc., for assault and battery. All defendants filed answers and motions to dismiss, and defendants McCormick and Turner filed counterclaims for assault and battery. At the conclusion of the plaintiff’s case-in-chief, the court on the defendants’ motion peremptorily instructed the jury in favor of defendants Turner and McCormick on their counterclaims and allowed the jury to consider the issue of damages on the separate counterclaims. The jury then assessed damages for McCormick and Turner at $1,000.00 and $1,500.00 respectively.
The Bethunes appeal, assigning four errors:
“1. The trial court erred in permitting the testimony of appellees and precluding the testimony of appellants through invocation of Rule 3.04, Uniform Circuit Court Rules;
2.The trial court erred in unconstitutionally depriving appellants of property without due process of law;
3. The trial court erred in overruling appellants’ motion for new trial;
4. The trial court erred in directing a verdict for appellee Marsha McCormick and against appellant Ruby Moon Bethune in that a question of fact was for the jury to decide and the directed verdict was against the greater weight of the evidence.”
We dispose of this case on the Bethunes’ first contention: that the trial court improperly invoked Uniform Circuit Court Rule 3.04 to preclude their testimony. A brief synopsis of the testimony prior to James Frank Bethune’s attempt to testify is in order.
The plaintiffs first called John Turner as an adverse witness for the sole purpose of establishing the master-servant relationship between Turner and Magnolia Towers. From this evidence, which was not controverted, it was established that Turner managed the property for Magnolia Towers, Inc. Subsequently Turner’s attorney directly examined him concerning the facts of the altercation in question. Stated briefly, Turner’s testimony was that on the evening of May 14, 1981, Turner and his girlfriend, Marsha McCormick, were watching TV in Turner’s apartment in Magnolia Towers. On three different occasions Bethune approached Turner’s door and complained loudly about a fire hose in the hall. The first two times Turner explained there had been a fire that evening and asked Bethune to leave. When Bethune came to the door a third time, Turner opened the door and Bethune struck him on the side of his face. Bethune attempted to strike Turner again but Turner resisted and a brawl ensued. According to Turner,
We went up against the wall — the east side of the wall and I think we fell to the floor. The next thing I knew, Mrs. Bethune was on my back, screaming and hollering and scratching, and I was hollering at Marsha — at this time louder and more frequent — to get the guard and get the police. She had been trying, I think — I don’t know for sure but I think she’d been trying to get the police by *773 phone. Anyhow, she came running out in the hall and pulled Mrs. Bethune off my back.
A tenant phoned the police, who arrived ■shortly thereafter and arrested the Be-thunes. Turner and McCormick went to the police station and pressed assault charges. Turner described his injuries as follows, “I had a big knot on the left side of my jaw; I had scratches on my back; I could hardly walk because of my back— him throwing me around and us wrestling.”
The Bethunes’ second witness was Fred Shanks, a college friend of Frank Bethune, who testified he had seen the Bethunes approximately an hour and a half before the altercation and that in his opinion they were not inebriated at that time. However, the Bethunes called as witnesses two other friends for the apparent purpose of testifying that the Bethunes were peaceful and law abiding citizens. On both occasions the court sustained the objection of Turner’s attorney to such testimony.
When Bethune took the stand, Turner’s attorney objected on the ground Bethune was an incompetent witness under the Uniform Rules of Circuit Court Practice since Bethune had offered four witnesses before taking the stand. The court sustained the objection and directed Bethune to step down.
While the general rule is that the trial court has discretion to enforce Rule 3.04 of the Uniform Rulés of Circuit Court Practice, the rule does not strictly apply to parties to the cause. Bernheim v. Dibrell, 66 Miss. 199, 5 So. 693 (1889). That case stated, “Where a party proposes to testify in his own behalf it is within the power of the court to require him to be first sworn, but this is the extent of the power....” 66 Miss. at 202, 5 So. at 693.
On similar facts the court reaffirmed the Bernheim holding in Moore v. Chambers, 199 So.2d 261 (Miss.1967). In Moore, the defendant attempted to testify after having heard the testimony of two of his own witnesses. Plaintiff’s counsel objected, and the court precluded the defendant’s testimony. We reversed, stating, “This Court has consistently followed the reasoning ... that before a party litigant can be kept from testifying ‘he must be given the alternative of testifying first or leaving the courtroom.’ The appellant was offered no such alternative in the instant case.” 199 So.2d at 263, citing VI Wigmore on Evidence, Section 1842 (3d ed. 1940). In explanation of its holding the court cited the following pertinent language from Wilson v. Peacock, 111 Miss. 116, 120-21, 71 So. 296, 297-98 (1916):
“Mere rules of practice should never stand in the way of permitting the jury to hear all the witnesses, and in this case the record discloses that nothing save a rule of practice denied this substantial mle of justice to the defendants. The trial court has the power, and should always exercise it, to relax or suspend all court rules, to the end that litigants may be assured of a full and fair hearing of this side of the controversy. The record does not show any reason why the discovery of the actual tmth would have been imperiled by the defendant’s testimony, and, in the absence of such showing, we think the trial court erred in refusing to permit the witness to testify.” (Emphasis added.)
199 So.2d at 263.
In this case the record does not indicate Bethune was granted the alternative of testifying first or leaving the courtroom.
We observe further plaintiffs’ counsel questioning of the four witnesses called prior to Bethune had little if anything to do with the events of the actual physical quarrel which was the basis of the suits and counter-suits. For this reason we do not think “the discovery of the actual truth would have been imperiled by the defendant’s testimony ...” 199 So.2d at 263.
*774 We are of the opinion strict adherence to the above rule of practice not only denied Bethune the right of having the jury hear his testimony as the complainant but also precluded him from testifying as a counter-defendant. For the reasons stated we reverse the judgment of the trial court and remand the cause for a new trial on the merits.
REVERSED AND REMANDED.
WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.